NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JASON B., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, S.B., *Appellees.*

No. 1 CA-JV 14-0068
FILED 08-28-2014

Appeal from the Superior Court in Maricopa County
No. JS12458
The Honorable Shellie F. Smith, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Law Office of Anne M. Williams, P.C., Tempe
By Anne M. Williams
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee DCS*

### MEMORANDUM DECISION

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Samuel A. Thumma joined.

J O N E S, Judge:

¶1          Jason B. (Father) appeals from the juvenile court's order terminating his parental rights.  For the reasons stated below, we affirm.

### FACTS[1] AND PROCEDURAL BACKGROUND

¶2          Father is the natural parent of S.B., born in August 2008. Father and S.B. lived together in California from the time S.B. was six months old until they moved to Arizona in 2011.  During their time in Arizona, Father and S.B. resided with Father's sister (Aunt).  In April 2012, Father returned to California for the birth of another child and left S.B. in Aunt's care in Arizona.  He then apparently stayed in California, while S.B. continued to live with Aunt in Arizona.  In September 2012, Father was arrested in California on charges of second degree robbery and attempted carjacking and has remained in custody in that state since that time.  In January 2013, Father pleaded guilty to second degree robbery and admitted having a "prison prior."   He was sentenced to a four year prison term and received 180 days of presentence incarceration credit.  During Father's imprisonment, S.B. continued to live with Aunt, who was the child's primary caretaker.

¶3          In May 2013, after the receipt of a private dependency petition the month prior, DCS[2] filed a petition to terminate Father's parental rights

---

[1] We view the facts in the light most favorable to sustaining the juvenile court's judgment. *In re MH 2008-001188,* 221 Ariz. 177, 179, ¶ 14, 211 P.3d 1161, 1163 (App. 2009).

[2] Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety (DCS) is substituted for the Arizona Department of Economic Security in this matter. See ARCAP 27.

with respect to S.B.,[3] alleging Father's felony sentence was of such length as to deprive S.B. of a normal home for a period of years. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(1), (4).[4]  In February 2014, the juvenile court held a joint dependency and severance adjudication hearing as to Father. Father appeared telephonically, offered testimony, and contested the termination.

**¶4**	The juvenile court found S.B. dependent as to Father, and determined DCS had established, by clear and convincing evidence, a statutory ground for termination of Father's parental rights to S.B., pursuant to A.R.S. § 8-533(B)(4).  The juvenile court also concluded DCS met its burden of proof as to its assertion that termination was in the best interest of S.B., noting she was adoptable and in a potentially adoptive placement with Aunt.  Father timely appealed.

## STANDARD OF REVIEW

**¶5**	In termination proceedings, the juvenile court, as the trier of fact, "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002). Consequently, we will reverse the juvenile court's findings only when there is "no reasonable evidence to support them." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2, 982 P.2d 1290, 1291 (App. 1998).  The juvenile court may terminate the parental relationship only upon finding clear and convincing evidence supports at least one statutory ground for termination. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000); A.R.S. § 8-533(B).  In addition, the juvenile court must also find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005); A.R.S. § 8-533(B).

---

[3] The petition also sought the termination of Mother's parental rights to S.B. on the ground of abandonment, and the juvenile court terminated Mother's parental rights in the same order that terminated Father's. Mother, however, did not appeal the termination order, and is not part of this appeal.

[4] Absent material revisions after the relevant dates, we cite the current version of statutes and court rules.

**DISCUSSION**

### I.    Jurisdiction

**¶6**    During the severance hearing, Father testified that he was granted full custody of S.B. in California prior to his move to Arizona.[5]  As a preliminary matter, although not raised by the parties in either the juvenile court or this court, we first must address whether we have subject matter jurisdiction to hear this appeal given the potential implication of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), which has been codified at A.R.S. §§ 25-1001 to -1067.  *See Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 316 n.2, ¶ 6, 965 P.2d 47, 50 n.2 (App. 1998) (noting that this court has an independent obligation "to determine whether we have jurisdiction" over an appeal).

**¶7**    The UCCJEA provides that an initial child custody order issued by a court with jurisdiction is binding upon all other states, absent certain events or circumstances, during the pendency of that order.  *Angel B. v. Vanessa J.*, 234 Ariz. 69, ¶ 8, 316 P.3d 1257, 1260 (App. 2014); A.R.S. § 25-1063.  When the court of another state has issued an initial custody determination regarding a child, and that order remains in place, Arizona courts may not address a subsequent termination petition regarding that same child unless one of the statutory exceptions applies.  *See Angel B.*, 234 Ariz. at ¶ 14, 316 P.3d at 1261.[6]

**¶8**    Here, Father asserted "California, San Bernardino County" granted him full custody of S.B. when she was six months old.  In doing so, however, Father did not state he was granted custody pursuant to a court order, offered no details about any such court order, and did not testify that such an order remained in place at the time of S.B.'s dependency or

---

[5] Specifically, in response to a series of questions regarding where S.B. lived at various times, Father volunteered: "I was granted full custody of her and everything.  All my full custody and my parental rights were granted to me out here in California, San Bernardino County."

[6] Although the express holding in *Angel B.* applied the UCCJEA to private termination proceedings, *see* 234 Ariz. at ¶ 14, 316 P.3d at 1261, the Act, by its terms, applies to any "child custody proceeding . . . in which legal custody, physical custody or visitation with respect to a child is an issue or in which that issue may appear," *see* A.R.S. § 25-1002(4)(a), and we see no logical reason the UCCJEA would not also apply to termination proceedings initiated by DCS while the child was a ward of the state.

termination proceedings. Furthermore, Father provided no documentary evidence that supported his suggestion that S.B. was subject to a valid custody order of another state, let alone that such an order remained in effect during these dependency and termination proceedings. In addition, we were unable to locate anything in the record before the juvenile court that substantiated Father's statement or otherwise indicated S.B. was the subject of an effective California court order granting Father custody at the time of the Arizona proceedings.

¶9 On this record, Father's statement was insufficient alone to invoke the UCCJEA and defeat the juvenile court's jurisdiction to enter the order terminating Father's parental rights. *See* A.R.S. § 8-532 (granting to Arizona superior courts "exclusive original jurisdiction over petitions to terminate the parent-child relationship when the child involved is present in this state"). Accordingly, the termination order was a final, appealable order, and we therefore have jurisdiction pursuant to A.R.S. §§ 8-235, 12-120.21(A)(1), and -2101(A)(1).

## II.     Termination of Parent-Child Relationship

¶10 Father argues his imprisonment did not deprive S.B. of a normal home, and termination was not in S.B.'s best interest. We address each argument in turn.

### A.     Reasonable Evidence Supports the Juvenile Court's Determination that the Statutory Ground for Termination Was Established

¶11 The juvenile court terminated Father's parental rights under A.R.S. § 8-533(B)(4), which permits termination of the parent-child relationship if the parent is convicted of a felony, and the resulting "sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." The juvenile court considers the total length of time the parent will be absent from the child, rather than the time remaining between the termination hearing and the end of the parent's sentence. *See Jesus M.*, 203 Ariz. at 281, ¶ 8, 53 P.3d at 206 ("What matters to a dependent child is the total length of time the parent is absent from the family, not the more random time that may elapse between the conclusion of legal proceedings for severance and the parent's release from prison.").

¶12 In termination proceedings pursuant to A.R.S. § 8-533(B)(4), the juvenile court considers "all relevant factors, including, but not limited to" six specific factors articulated by our supreme court in *Michael J.*:

(1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

196 Ariz. at 251-52, ¶ 29, 995 P.2d at 687-88.

**¶13** While the juvenile court is not required to expressly engage in the factor analysis articulated in *Michael J.*, we do so here to demonstrate our conclusion that reasonable evidence supports the juvenile court's findings that Father's incarceration will deprive S.B. of a normal home for a period of years. *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451-52, ¶ 19, 153 P.3d 1074, 1080-81 (App. 2007) (holding express findings on *Michael J.* factors are not required).

**¶14** The first factor concerns the length and strength of the relationship between S.B. and Father before Father's incarceration. *Michael J.*, 196 Ariz. at 251-52, ¶ 29, 995 P.2d at 687-88. Father testified that S.B. lived with him in California from the time she was six months old until she moved to Arizona in 2011. However, the juvenile court found Father had not actually cared for S.B. since 2011, when he brought S.B. to live with Aunt, and the last time Father saw S.B. was in September 2012, when S.B. was four years old. Other evidence indicated S.B.'s uncle, not Father, had brought the child to Arizona when she was only one year old because there were concerns that her parents were not providing adequate care. Thus, reasonable evidence indicated the length of S.B. and Father's relationship was of short duration, and the strength of that relationship was insubstantial at the time Father began his sentence.

**¶15** The second factor reviews the degree to which Father and S.B.'s relationship can be continued and nurtured during Father's imprisonment. *Id.* Father asserts S.B. was brought to visit him regularly during his incarceration, and that such visits facilitated their parent-child relationship. However, the caseworker testified Father had not seen S.B. for approximately two years, or since S.B. was approximately four years old. Father stated he made monthly deposits of $300 to help support S.B., sent S.B. letters, cards, and a Christmas gift, and made weekly phone calls to S.B. Other evidence received at the hearing, however, indicated S.B. did

not have a bond with Father due to his lack of participation in caring for her the past few years. This factor, therefore, does not weigh strongly in either direction, but tips slightly in favor of termination.

¶16       The third factor considers the child's age and whether incarceration will deprive a child of a normal home. *Id.* Father asserts his incarceration does not deprive S.B. of a normal home because S.B. remains in the care of Aunt, and his efforts to maintain regular contact and financial support established a parental relationship. Father further argues he provided a home with permanency and stability by first seeking custody of S.B., and then by bringing S.B. with him to live with Aunt in Arizona, where, he asserts, they both jointly raised the child.

¶17       We cannot agree with Father's assertion. The statutory meaning of "normal home" pertains to Father's obligation to provide a home for S.B. in which he has a presence, "and it does not refer to a 'normal home' environment created by [others]." *Maricopa Cnty. Juvenile Action No. JS-5609*, 149 Ariz. 573, 575, 720 P.2d 548, 550 (App. 1986). Under the most favorable testimony presented, after living in Arizona for a short period of time, Father left S.B. in Aunt's care in April 2012 in order to return to California. The record is not clear whether Father ever returned to Arizona to visit S.B. prior to his arrest and incarceration in September 2012. Consequently, we presume Father last saw S.B. when she was approximately three and a half years old. The facts support the conclusion that Aunt's presence in the home, rather than Father's, provided normalcy and regularity for S.B.

¶18       The period of years S.B. is deprived of a normal home closely relates to the fourth factor, which considers the length of the parent's sentence. *Michael J.*, 196 Ariz. at 251-52, ¶ 29, 995 P.2d at 687-88. Father began his sentence when S.B. was four years old. If Father earns the early release of January 2016, and serves the minimum six months parole in California, the earliest he will be able to return to S.B. is July 2016, when S.B. will be nearly eight years old.[7] In this best case scenario, Father will have been absent from S.B. for over four years, and S.B. will have spent more than half of her life with Aunt. Given S.B.'s young age, her current lack of a bond with Father, and her need for stability and permanency, reasonable

---

[7] Moreover, the DCS Case Manager testified that, due to a lack of knowledge regarding Father's parenting skills, even after Father's release S.B. would not be immediately returned to Father's custody until DCS was able to further investigate Father's parenting skills.

evidence supports termination based upon the length of Father's incarceration.

**¶19** The fifth *Michael J.* factor considers the availability of another parent to provide a normal home life. *Id.* As applied, Mother's parental rights have been terminated and that termination has become final. Accordingly, with Father in prison, there is no natural parent available to provide a normal home life for S.B.

**¶20** The sixth factor evaluates the effect a parent's absence has upon the child. *Id.* Although Father asserts in uncontroverted testimony that S.B. knows and loves him, S.B.'s behavioral evaluation concluded S.B. had bonded not to her parents, but to Aunt, and further noted S.B. responds positively to Aunt. Thus, reasonable evidence as to this factor supports termination.

**¶21** "[T]here is no threshold level under each individual factor in *Michael J.* that either compels, or forbids, severance," and such analysis is an "individualized, fact-specific inquiry." *Christy C.*, 214 Ariz. at 450, ¶ 15, 153 P.3d at 1079. Here, we find the record contains reasonable evidence to support the juvenile court's termination of Father's parental rights to S.B.

> **B. Reasonable Evidence Supports the Determination that Termination of the Parent-Child Relationship Was in the Best Interest of S.B.**

**¶22** Father also asserts the juvenile court erred by concluding the termination of his parental rights was in the best interests of S.B. Specifically, he argues the only reason asserted for severing his rights, versus establishing a guardianship, was to permit Aunt to adopt S.B. so she would be eligible to receive the greater adoption subsidy. Father's contention is unavailing as, beyond any financial incentive, the juvenile court correctly found termination to be in S.B.'s best interest.

**¶23** Termination is in the child's best interests when evidence demonstrates the child "would derive an affirmative benefit from termination or incur a detriment by continuing the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6, 100 P.3d 943, 945 (App. 2004). In performing this analysis, relevant factors the juvenile court may consider include whether: (1) an adoptive placement is available, (2) the current placement is meeting the child's needs, and (3) the child is adoptable. *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23, 312 P.3d 861, 866 (App. 2013); *Audra T.*, 194 Ariz. at 377, ¶ 5, 982 P.2d at 1921; *Maricopa*

*Cnty. Juvenile Action No. JS-501904*, 180 Ariz. 348, 352, 884 P.2d 234, 238 (App. 1994).

¶24    Here, the juvenile court concluded termination would benefit S.B. "because [she] is adoptable and is in need of a stable home," "[she] is residing with [Aunt] who is committed to adopting her," "[her] current placement is the least restrictive placement available consistent with the needs of the child," and "termination of [Father's] parental rights would further the plan of adoption."

¶25    The record supports these conclusions as the court's findings largely adopt the testimony provided by the DCS Case Manager at the severance hearing. Specifically, the DCS Case Manager testified that S.B. was adoptable, S.B.'s placement with Aunt was the least restrictive placement, Aunt was willing to adopt, and Aunt provided S.B. with a stable home that met her daily needs. Therefore, as the termination of Father's parental rights allows S.B. to be adopted by Aunt, thereby providing her permanency in a stable home that is meeting her daily needs, the evidence supports the juvenile court's conclusion that termination was in the best interest of S.B.

## CONCLUSION

¶26    For the foregoing reasons, we affirm the juvenile court's termination of Father's parental rights to S.B.



Ruth A. Willingham · Clerk of the Court
FILED: gsh